[874 NYS2d 513]

In the Matter of Rene G. Garcia, an Attorney, Respondent. Grievance Committee for the Second, Eleventh and Thirteenth Judicial Districts, Petitioner.

Second Department, February 24, 2009

### APPEARANCES OF COUNSEL

*Diana Maxfield Kearse*, Brooklyn (*Mark F. DeWan* of counsel), for petitioner.

*Flamhaft Levy Hirsch & Rendeiro LLP*, Brooklyn (*Harold Levy* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Second, Eleventh and Thirteenth Judicial Districts (hereinafter the Grievance Committee) served the respondent with a petition, dated November 20, 2007 containing 10 charges of professional misconduct. After hearings on April 7, 2008 and April 23, 2008, the Special Referee sustained all 10 charges. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline as the Court deems appropriate. The respondent also moves to confirm the Special Referee's report, having admitted the 10 charges of the petition, and asks the Court to take mitigating evidence into account when determining the sanction.

Charge one alleges that the respondent converted to his own use funds entrusted to him as a fiduciary, incident to his practice of law, on behalf of client Maria Arevalo, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

The respondent maintained a checking account at North Fork Bank that was identified as his attorney IOLA account into which he deposited client funds and other funds entrusted to him as a fiduciary. On or about October 26, 2005, the respondent deposited the sum of $6,250 into his attorney escrow account on behalf of client Maria Arevalo as the proceeds of a personal injury settlement. On or about November 9, 2005, the respondent drew a check in the amount of $4,083.34 payable to the order of Ms. Arevalo as her share of the settlement. From approximately October 26, 2005 until approximately November 9, 2005, the respondent was required to maintain a balance of at least $4,083.34 in his attorney escrow account on her behalf. By October 28, 2005, the balance in the respondent's attorney escrow account was depleted to $253.68.

Charge two alleges that the respondent converted to his own use funds entrusted to him as a fiduciary, incident to his practice of law, on behalf of client Maribel Paz, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about October 28, 2005, the respondent deposited the sum of $6,500 into his attorney escrow account on behalf of client Maribel Paz as the proceeds of a personal injury settlement. On or about November 20, 2005, the respondent drew a check in the amount of $4,226.67 from his attorney escrow account payable to Ms. Paz as her share of the settlement. From approximately October 28, 2005 until November 20, 2005, the respondent was required to maintain a balance of at least $4,226.67 in his escrow account on behalf of Ms. Paz. By November 10, 2005, the balance in the respondent's escrow account was depleted to $4,083.34.

Charge three alleges that the respondent converted to his own use funds entrusted to him as a fiduciary, incident to his practice of law, on behalf of client Ronnie Recai, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about November 10, 2005, the respondent deposited a check in the amount of $3,125 into his attorney escrow account on behalf of client Ronnie Recai as the first proceeds of a personal injury settlement. On or about November 21, 2005, the respondent deposited a check in the amount of $7,500 into his attorney escrow account on behalf of Ms. Recai as the second portion of her personal injury settlement.

On or about February 1, 2006, the respondent drew a check on his attorney escrow account in the amount of $6,337.75, payable to the order of Ms. Recai as her share of that settlement. From approximately November 21, 2005 to February 1, 2006, the respondent was required to maintain a balance of at least $6,337.75 in his attorney escrow account on behalf of Ms. Recai. By December 27, 2005, the balance was depleted to $2,798.33.

Charge four alleges that the respondent converted to his own use funds entrusted to him as a fiduciary, incident to his practice of law, on behalf of client Catherine Doyle, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about March 14, 2006, the respondent deposited the balance of $25,000 into his attorney escrow account on behalf of

client Catherine Doyle as the proceeds of a personal injury settlement. On or about May 26, 2006, he drew a check in the amount of $15,920.68 payable to the order of Ms. Doyle as her share of that settlement. From approximately March 14, 2006 until May 26, 2006, the respondent was required to maintain a balance of at least $15,920.68 in his attorney escrow account on behalf of Ms. Doyle. By March 23, 2006, the balance in the respondent's attorney escrow account was depleted to $14,173.34.

Charge five alleges that the respondent converted to his own use funds entrusted to him as a fiduciary incident to his practice of law on behalf of client John Maloney, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about May 11, 2006, the respondent deposited a check in the amount of $8,000 into his attorney escrow account on behalf of client John Maloney as the first portion of the proceeds of a personal injury settlement. On or about May 25, 2006, he deposited a check in the amount of $4,000 into that account on behalf of Mr. Maloney as the second portion of the personal injury settlement.

On or about July 14, 2006, the respondent drew a check on his attorney escrow account in the amount of $6,907.82 payable to Mr. Maloney as his share of that settlement. From approximately May 25, 2006 until July 14, 2006, the respondent was required to maintain at least $6,907.82 in his attorney escrow account on behalf of Mr. Maloney. By June 21, 2006, the balance was depleted to $6,711.27.

Charge six alleges that the respondent failed to safeguard funds entrusted to him as a fiduciary, incident to his practice of law, on behalf of client Juan Torrico, in violation of Code of Professional Responsibility DR 9-102 (b) (22 NYCRR 1200.46 [b]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On or about March 23, 2006, the respondent received a check in the amount of $22,000 from client Juan Torrico as payment for legal services provided. Inasmuch as Mr. Torrico disputed the exact amount owed, the respondent agreed to hold that check in escrow pending resolution of the fee dispute. That check was not deposited into the respondent's attorney escrow account until approximately September 18, 2006.

Charge seven alleges that the respondent paid himself legal fees for two personal injury matters before depositing the corre-

sponding settlement checks into his attorney escrow account, in violation of Code of Professional Responsibility DR 9-102 (b) (22 NYCRR 1200.46 [b]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about October 28, 2005, the respondent withdrew the sum of $6,000 from his attorney escrow account to pay himself legal fees for personal injury matters for three clients: Maria Arevalo, Maribel Paz, and Ronnie Recai. However, he did not deposit the settlement checks for the Recai matter into his attorney escrow account until approximately November 10, 2005 and November 21, 2005. Between approximately November 10, 2005 and December 20, 2005, the respondent made four withdrawals from his attorney escrow account totaling $8,270.34 to pay himself legal fees for personal injury matters for four clients: Maria Arevalo, Maribel Paz, Ronnie Recai, and Steven Wander. The respondent did not deposit the settlement checks for the Wander matter into his attorney escrow account until approximately January 26, 2006.

Charge eight alleges that the respondent engaged in a pattern and practice of failing to promptly pay his clients the shares of the proceeds of the personal injury settlements to which they were entitled, in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]) and DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]).

On or about October 28, 2005, the respondent deposited the sum of $6,500 into his attorney escrow account on behalf of client Maribel Paz as the proceeds of a personal injury settlement. He failed to pay her share of the settlement ($4,226.67) until approximately November 20, 2005.

On or about November 10, 2005, the respondent deposited a check in the amount of $3,125 into his attorney escrow account on behalf of client Ronnie Recai, as the first proceeds of a personal injury settlement. On or about November 21, 2005, he deposited a check in the sum of $7,500 on behalf of Ms. Recai as the second portion of the settlement proceeds. The respondent failed to pay Ms. Recai her share of that settlement ($6,337.75) until approximately February 1, 2006.

On or about March 27, 2006, the respondent deposited the sum of $4,250 into his attorney escrow account on behalf of client Colin Williams as the proceeds of a personal injury settlement. The respondent failed to pay Mr. Williams his share of the settlement ($2,416.67) until approximately May 15, 2006.

On or about May 11, 2006, the respondent deposited the sum of $15,000 into his attorney escrow account on behalf of client Susan Ampofo as the proceeds of a personal injury settlement. The respondent failed to pay Ms. Ampofo her share of that settlement ($9,506.67) until approximately July 20, 2006.

On or about July 18, 2006, the respondent deposited the sum of $25,000 into his attorney escrow account on behalf of client Rosemary Martinez as the proceeds of a personal injury settlement. The respondent failed to pay Ms. Martinez her share of that settlement ($7,810) until on or about October 2, 2006.

Charge nine alleges that the respondent failed to maintain required bookkeeping records for his attorney trust account, in violation of Code of Professional Responsibility DR 9-102 (d) (2), (8) and (j) (22 NYCRR 1200.46 [d] [2], [8]; [j]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The respondent failed to maintain records of all deposits into and withdrawals from his attorney trust account, showing the date, source, and description of each item deposited and the date, payee, and purpose of each withdrawal or disbursement. The respondent failed to maintain a ledger book or similar record for his attorney trust account, showing the source of all funds deposited into it, the names of all persons for whom those funds were held, the description and amounts of those funds, and the names of all persons to whom those funds were disbursed. The respondent failed to maintain the required checkbooks, check stubs, bank statements, prenumbered canceled checks, and duplicate deposit slips for his attorney trust account.

Charge 10 alleges that the respondent engaged in a pattern of failing to file closing statements with the Office of Court Administration (hereinafter OCA), in violation of 22 NYCRR 691.20 (b) and Code of Professional Responsibility DR 1-102 (a) (5) and (7) (22 NYCRR 1200.3 [a] [5], [7]).

Between July 2001 and November 2006, the respondent filed 143 retainer statements with OCA on behalf of his law firm. Between July 2001 and December 31, 2002, he filed only 10 closing statements. Since January 1, 2003, the respondent did not file any closing statements.

Inasmuch as all of the factual allegations have been admitted and the respondent has joined in the Grievance Committee's motion to confirm, the Special Referee properly sustained all 10 charges and the Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, we note that the respondent has no prior disciplinary history.

The respondent asks the Court to consider such mitigating factors as the absence of economic harm to any client; his abandonment of the Quikbooks system in favor of personally reconciling his accounts with his banking statements; his excellent reputation in the legal community; his sincere remorse; and his full cooperation with the Grievance Committee. The respondent has admitted from the outset of the investigation that he unreasonably relied upon others to manage his accounts. He notes that the conversions were not motivated by venality. The respondent was unaware that his father, upon whom he relied to manage his account, had delegated that responsibility to his brother or that his brother suffered from a psychiatric disorder which prevented him from focusing on his accounting duties. The respondent belatedly discovered, to his detriment, that during his brother's management of his accounts, the Quikbooks entries had not been reconciled with bank statements. It became evident from continued communications with the Grievance Committee that the accounting errors went beyond the error which caused the subject check to be dishonored. Upon ascertaining that fact, the respondent instructed both his brother and his father to cease working on his accounts.

Under the totality of circumstances, we conclude that the respondent's misconduct warrants his suspension from the practice of law for a period of one year.

PRUDENTI, P.J., RIVERA, SPOLZINO, SKELOS and CARNI, JJ., concur.

Ordered that the respondent, Rene G. Garcia, is suspended from the practice of law for a period of one year, commencing March 24, 2009, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the one-year period upon furnishing satisfactory proof (a) that during that period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (c) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (3); and (d) that he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Rene G. Garcia, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Rene G. Garcia, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).